OTT, Judge.
This appeal is from a postjudgment order of the trial court construing and applying a provision of the Settlement Agreement that was incorporated into the earlier final judgment of divorce. The provision related to responsibility of the husband (appellant here) for certain limited medical expenses of the wife (appellee here). In his order the trial judge ordered the appellant to pay the medical expenses of the appellee thus far incurred. In this we agree, although on different grounds. The trial court further ordered the appellant to pay “. . . all of the wife’s future medical bills . until said injuries have been corrected or until such time as she has reached maximum medical improvement for same.” In this we do not agree for the reasons hereinafter given.
The pertinent provision of the Settlement Agreement reads as follows:
5. The husband will pay for the wife’s doctor or dentist bills for the repair of damage to the left side of her jaw and teeth. This obligation will cease if treatment is not now commenced.”
The case was tried below and argued here on the premise that the “damage” referred to is that resulting from a blow the appellant had struck the appellee shortly before the institution of the original dissolution proceeding. The single issue, therefore, is what portion if any of the medical expenses of the appellee incurred since the agreement or indicated in the future related to damage then under treatment.
The parties stipulated to the use of certain medical reports from various doctors and dentists involved in lieu of direct testimony (either by deposition or in person at the hearing). All of the doctors and dentists were either selected by the wife or were specialists to whom her own choices had referred her. We have carefully examined all the evidence in the light most favorable to the appellee.
At the time of the agreement and final judgment of divorce on October 3, 1974, the appellee had only been seen by a Dr. Goggin in the emergency room of the hospital on the night of the altercation and by her family dentist, Dr. Watters. Dr'. Watters, however, had referred her to Dr. *76 Young, an oral surgeon, who saw’the appel-lee about a week after the final judgment. Subsequent to the final judgment of divorce Dr. Young wrote his report to Dr. Watters in which he reported two problems:
1. Diffused nerve paresthesia related to the blow. He felt sensation should return in 6 to 12 months. No specific treatment was recommended for this condition or “damage.”
2. Pain Dysfunction Syndrome and related difficulties produced by emotional strain and occlusal imbalance independent of the blow. This condition would require immediate conservative treatment (moist heat, soft diet, muscle relaxant and tranquilizers) to relieve the muscle spasm and tenderness. Thereafter more extensive dental procedures would be required to correct the basic deficiencies underlying this problem.
Parenthetically we note that Dr. Young did not suggest that either of the two conditions had any connection with or effect upon the other.
Some seven (7) months later the appellee consulted a Dr. Benson, a D. 0. Appellee had not followed through with further dental care because there had been no material improvement in the conditions described by Dr. Young. Apparently Dr. Benson could not or did not specifically diagnose or treat the jaw. He immediately referred the ap-pellee to Watson Clinic in Lakeland, Florida. There she was hospitalized for several days for extensive diagnostic procedures by Dr. Lopez and a dental surgeon, Dr. Brzo-zowski. They found it difficult to assess the cause and extent of the persistent acute difficulties of the appellee and therefore referred the appellee and all of her records to Dr. Greer, a specialist at the J. Hillis Miller Health Center at the University of Florida for a final diagnosis.
Dr. Greer’s detailed report eliminates any neurological or organic condition and suggests that the appellee’s present complaints and difficulties were of psychogenic origin. He concludes: “. . .1 could not at the present time attribute the severe disability . described ... to the trauma she had undergone.”
The trial court directed the appellant to pay the above described medical expenses. We agree. The above evidence supports the conclusion that until the opinion of Dr. Greer it could not be said that the damage under treatment had ever concluded.
The trial court further directed that the appellant pay all future ^medical expenses of the appellee until all of her problems were resolved regardless of cause. There is no evidence even suggesting that the damage inflicted by the appellant requires further medical attention of any kind.
The trial court erroneously based his holding on the requirement that the tort-feasor “take his victim as he finds him.”
Quite clearly this is not a damage action in tort. It involves the provision of the contract or agreement entered into after the tort and for the purpose of delineating the responsibility of appellant in connection therewith. Tort law has no application or bearing.
The appellee’s own evidence fails to bring her continuing or future problems under the limited responsibility of the appellant for the damage his blow inflicted.
We, therefore, affirm that portion of the trial court’s order directing the appellant to pay the unpaid expenses thus far incurred in the amount of $967.73. We also affirm the award of appellee’s attorneys fees against the appellant.
We reverse that portion of the trial court’s order directing the appellant to pay any further or future medical expenses of the appellee.
Remanded for entry of an order consistent with the foregoing.
BOARDMAN, C. J., and McNULTY, J., concur.